IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DORIS FRONCKOWIAK,                                   Case No. 1:19-cv-01945-AA
                                                     **OPINION AND ORDER**
            Plaintiff,

      vs.

SEARS AUTHORIZED HOMETOWN
STORES,LLC,

            Defendant.

———————————————————

AIKEN, District Judge:

      This case arises out of two separate underlying arbitration proceedings.
Plaintiff, Doris Fronckowiak, has filed this action seeking a declaratory judgment
finding that defendant, Sears Authorized Hometown Stores, LLC ("SAHS") violated
the terms of various agreements between the parties.  She also seeks injunctive relief
vacating an arbitrator's ruling that joined her as a party in one of the underlying
arbitration proceedings.  Finally, plaintiff requests that SAHS be enjoined from
further alleged violations of the parties' agreements.  Doc. 4.  Two motions are now

before the Court.  Plaintiff has filed a motion for reconsideration of this Court's denial of a temporary restraining order ("TRO").  Doc. 20.  Defendant has filed motion to dismiss for lack of subject matter jurisdiction pursuant to Fed R. Civ. P. 12(b)(1), arguing that, because a final award has been entered against plaintiff in the underlying arbitration proceeding, this action is moot.  Doc. 16.

For the reasons set forth below, plaintiff's motion for reconsideration is DENIED, and defendant's motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff is a former independent owner of at least two Sears Authorized Hometown Stores, "the Stores" one located in Grants Pass, OR and another in Klamath Falls, OR.  Independent owners of the Stores sell SAHS-procured merchandise on consignment in return for a variable commission from the proceeds on each sale, pursuant to a "dealer agreement."  Notably, the dealer agreements in this case require the parties to submit all claims arising out of the agreement to binding arbitration before American Arbitration Association ("AAA").

Plaintiff and defendant entered a dealer agreement which established plaintiff as a franchisee of SAHS operating out of Grants Pass, Oregon in November 2016. This Store was owned and operated by plaintiff's entity Parkway Hometown, Inc. Plaintiff owned and operated another Store in Klamath Falls, Oregon from 1999 to 2017.  Sometime in early 2017, plaintiff sold the rights to the Klamath Falls Store to

the entity So-Mo, Inc. ("So-Mo") which was co-owned by plaintiff and her son Christopher Fangman.[1]

At that time, defendant entered into a new dealer agreement with So-Mo granting it a limited license to operate the Klamath Falls Store.  Fangman signed the dealer agreement as owner of So-Mo, personally guaranteeing So-Mo's obligations under the agreement.  Though she did not sign the So-Mo Dealer Agreement, it is undisputed that plaintiff also executed a Joinder Agreement in February 2017, where she agreed to be bound by the dealer agreement's non-competition covenant which would come into effect should the deal agreement be terminated.  The Joinder Agreement states, in pertinent part, that:

> [i]n order to induce Sears Authorized Hometown Stores, LLC to execute the Agreement and in consideration of the material benefits to be derived by the undersigned therefrom, each of the undersigned, constituting all the owners, officers and directors of Owner, hereby joins in and agrees to be bound by all the provisions of Section 15 of the Agreement, as his or her primary and direct obligations, with the same force and effect as if he or she were the Owner.

Pl's Am. Compl. ¶ 21. Section 15 of the So-Mo Dealer Agreement outlines a covenant not to compete which provides, *inter alia*, that those bound by the agreement may not have an ownership interest in a competing business during the term of the agreement or for a period of two years after the termination or expiration of the agreement.

In March 2019, Fangman contacted defendant, informing it that he would be abandoning the Klamath Falls Store prior to the expiration of the dealer agreement

---

[1] Defendant alleges that the rights were purported sold for a price of $100,000, but only $10 was actually paid by plaintiff.

which was set for July 2, 2022. Eventually, defendant terminated the agreement on April 30, 2019 after further representations and withheld payments from Fangman. Defendant then initiated arbitration proceedings against So-Mo in May of 2019 ("So-Mo Abitration"). It also sought emergency enforcement of various provisions under the dealer agreement, which were granted by the arbitrator. Defendant also requested an order enjoining Fangman and So-Mo from violating the terms of the post-termination non-competition clause found in Section 15 of the So-Mo Dealer Agreement. The arbitrator initially denied that request because defendant lacked evidence that Fangman was competing in violation of the dealer agreement at that time.

Defendant alleges that a competing store, Basins Home Appliance and Service Center, was opened by So-Mo and Fangman and has been continuously operating since July 2019. After gathering evidence, defendant obtained a preliminary injunction from an appointed arbitrator on September 5, 2019 which ordered So-Mo and Fangman to cease their involvement in the competing store. When later attempting to confirm compliance with this order, Fangman testified in deposition that he was not involved with the competing store but rather alleged that plaintiff was the sole operator.

Defendant then filed with the arbitrator a motion to join plaintiff as a party to the So-Mo Arbitration. After briefing, in which plaintiff and Fangman opposed the joinder, the arbitrator granted the motion ruling that plaintiff was a proper party to the arbitration.

While these proceedings were ongoing, plaintiff and defendant were involved in arbitration dealing with the Grants Pass Store owned by plaintiff's entity Parkway Hometown Inc ("Parkway Arbitration"). Plaintiff alleges that supply shortages and related issues in October 2018 threatened the economic viability of the Grants Pass Store and the contractual relationship with defendant, which was not set to expire until July 2021. As a result of these difficulties, plaintiff and defendant negotiated and executed a Mutual Termination Agreement ("MTA") in April 2019 which effectively ended, with some exceptions, the Parkway Agreement.

A second arbitration was initiated by defendant in June 2019 dealing with the set of agreements involving Parkway Hometown, Inc. and the Grant's Pass Store. This action was pending before a different arbitrator with a final hearing set to begin in February 2020. After defendant sought to join plaintiff in the So-Mo Arbitration, plaintiff filed a motion in the Parkway Arbitration requesting that the arbitrator prohibit plaintiff from being added as party to the So-Mo Arbitration. The arbitrator in the Parkway matter denied that motion, noting that she had no authority to enjoin the actions of parties to a separate arbitration proceeding.

Following the denial of her motions before the arbitrators in the So-Mo and Parkway Arbitrations, plaintiff filed the present complaint seeking declaratory and injunctive relief with this Court. Plaintiff also moved for a TRO asking this Court to enjoin the So-Mo Arbitration, which was denied.

In March 2020, a final award was entered by the arbitrator in the So-Mo Arbitration against plaintiff, her son, and So-Mo. Defendant then filed a motion to

dismiss plaintiff's complaint as moot.   Doc. 14.   In response to that motion, plaintiff requested reconsideration of this Court's denial of her request for a TRO and preliminary injunction.   Docs. 19 and 20.

## LEGAL STANDARD

I.    *Motion for Reconsideration*

A motion for reconsideration is often considered analogous to a motion to alter of amend a judgment under Fed. R. Civ. P. 59(e). *See, e.g.*, *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GMbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Granting a motion for reconsideration is "an extraordinary remedy, used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quotation omitted). Reconsideration is appropriate only if "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999).

II.    *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*

Courts must dismiss a claim if it lacks subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).   For motions to dismiss under Rule 12(b)(1), unlike a motion under Rule 12(b)(6), the moving party may submit

> affidavits or any other evidence properly before the court.... It then
> becomes necessary for the party opposing the motion to present

> affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction. The district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes.

*Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000) (citing

*St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989)).

To avoid advisory opinions on abstract principles, the jurisdiction of Article III courts is limited to actual cases and controversies. *California v. San Pablo & T.R. Co.*, 149 U.S. 308 (1893). Mootness is among the justiciability requirements that ensure that courts adhere to this jurisdictional limitation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

## DISCUSSION

In her complaint, plaintiff alleges that defendant violated the terms of its Dealer Agreements and violated the 2019 MTA's release of obligations when defendant sought to join her to the So-Mo arbitration.

Plaintiff concedes that she contracted to arbitrate with defendant as to the alleged violations involving the Grants Pass Store and the Parkway Dealer Agreement. Section 27 of the Parkway Dealer Agreement provides that:

> all controversies, disputes, and claims arising between, on the one hand, [SAHS] [...] and, on the other hand, [Fronckowiak] [...], arising out of or relating to (a) this Agreement or any other agreement between [SAHS] and [Fronckowiak], (b) the relationship between [SAHS] and [Fronckowiak], (c) the validity, scope, or enforceability of this Agreement or any other agreement between [SAHS] and [Fronckowiak] or any term

or condition of any of them, or (d) any specification, standard, process, program, or operating procedure relating to the establishment or operation of the Store (each an "Arbitrated Claim") will be submitted by [SAHS] and [Fronckowiak] for arbitration to be administered by the regional office of the [AAA] that is located nearest the Store on demand of either [SAHS] and [Fronckowiak].

Pl's. Am. Compl. Ex C. § 27.2.

She also maintains that even if the 2017 Joinder Agreement binding her to the So-Mo Dealer Agreement's non-competition prohibition, which she signed to induce defendant to allow her son and So-Mo to continue operating the Klamath Falls Store, is construed as an agreement to arbitrate, then it was terminated by the 2019 MTA. The MTA included a release and settlement of claims which detailed, in pertinent part, that:

[SAHS] hereby release[s] and forever discharge[s] [Fronckowiak] from any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action, whether known or unknown, vested or contingent, which [SAHS] may now or in the future own or hold, that in any way relate to the Dealer Agreement, any other agreement between [SAHS] and [Fronckowiak], the [Grants Pass] Store, or the relationship between [SAHS] and [Fronckowiak] through [April 1, 2019], for known or unknown damages or other losses, including but not limited to any alleged violations of any laws, statutes, rules or regulations, and any alleged violations of the Dealer Agreement, or any other related agreement between [SAHS] and [Fronckowiak] through [April 1, 2019].

Pl's Am. Compl. Ex. B. § 2.3(B).[2] Notably, however, the MTA also included a mechanism for resolving future disputes. It provided that "[t]he parties agree

---

[2] Defendant explicitly did not release plaintiff's from "any Surviving Obligations arising under the Dealer Agreement or other obligations arising under this Agreement." *Id.*

that *any disputes arising under this Agreement, or otherwise*, will be resolved by arbitration as provided in the dealer agreement." *Id.* at § 2.10.

Plaintiff also argues that defendant was contractually barred by from seeking to join her as a party in the So-Mo Arbitration for allegedly violating the non-competition agreement by the terms of the So-Mo Dealer Agreement.  Section 27.4 of the So-Mo and Parkway Dealer Agreements provides that:

> [a]ll arbitrations will be conducted on an individual basis, not as a plaintiff or class member in any purported class or representative proceeding, and all Arbitrated Claims by or against a party to the arbitration will be heard on an individual basis and not consolidated with the Arbitrated Claims of any other parties to the arbitration.

Def's Resp. to Pl's Mot. For TRO Ex. A § 27.4.

In its motion to dismiss, defendant argues that a final award has been entered in the So-Mo Arbitration against plaintiff and Fangman.  Thus, the present complaint is moot since it sought to enjoin the So-Mo Arbitration and plaintiff's joinder to it.  Plaintiff, for the first time, argues that her claims are still justiciable because her complaint is actually challenging the arbitrator's jurisdiction over her.  She moves for reconsideration of the Court's previous order, and requests that Court vacate the final award of the So-Mo Arbitrator.

I.    *Motion for Reconsideration*

First, the Court construes plaintiff's motion for reconsideration as having been brought under Fed. R. Civ. P. 59.  In her motion for reconsideration, plaintiff offers no newly discovered evidence, nor does she argue that there has been an intervening

change in controlling law. Rather it appears that she argues that order denying her motion for a TRO was clear error.

Setting aside whether plaintiff can possibly show the type of emergent harm required for a TRO when they have already participated in the underlying arbitration she sought to enjoin,[3] plaintiff has not shown the requisite likelihood of success on the merits as pshe was bound to arbitrate her disputes with defendant. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs arbitration agreements in contracts involving interstate commerce. "The FAA reflects both a 'liberal federal policy favoring arbitration' ... and the 'fundamental principle that arbitration is a matter of contract,'...." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (*quoting AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Pursuant to the FAA, "[a] written provision in any [...] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract [...] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The savings clause of this provision permits a party to challenge an arbitration agreement pursuant to a generally applicable state law contract defense, such as fraud, duress, or unconscionability." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051,

---

[3] Alternatively, litigation costs faced by plaintiff in the arbitration would not have constituted irreparable harm. *See Boardman v. Pac. Seafood Grp.*, 2015 WL 13744253, at *2 (D. Or. Aug. 6, 2015)

1059 (9th Cir. 2020) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, (1996). "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir.1999) (citation omitted).

The question of arbitrability is also a matter of contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019). "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* at 527. "[T]he role of the federal courts in these circumstances is limited:  the sole question is whether the arbitration clause at issue is valid and enforceable under section 2 of the [FAA]." *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 937 (9th Cir. 2001)

First, and most importantly, this entire case appears to be premised on appeals from an arbitrator's decisions.  Plaintiff only sought relief from this Court after first submitting her request for relief, that she not be joined to So-Mo Arbitration, to two arbitrators in the underlying arbitrations.[4]

---

[4] "A party may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator to act." *Ralph Andrews Prods., Inc. v. Writers Guild of Am., West*, 938 F.2d 128, 130 (9th Cir.1991; see also Metzler Contracting Co. LLC v. Stephens, 774 F. Supp. 2d 1073, 1080 (D. Haw. 2011), aff'd, 479 F. App'x 783 (9th Cir. 2012) ("a party must challenge arbitrability in a judicial proceeding instead of, not after, voluntarily submitting the case to the arbitrator.")

"The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, (1987); *see also Entm't Publications, Inc. v. Ravet*, 7 F. App'x 807, 808 (9th Cir. 2001) ("Consistent with the strong public policy favoring arbitration, this court will not disturb an arbitration order so long as the arbitrator even arguably construed or applied the contract and acted within the scope of [her] authority.")

Her response to the defendant's motion to dismiss maintains only that plaintiff has preserved jurisdictional challenges to arbitration, and to ignore those challenges would result in a manifest injustice. It would indeed be unjust to require plaintiff to submit a dispute about arbitration to an arbitrator where she has not agreed to do so. *See Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). However, the plain language of the agreements involved here compel arbitration, including regarding the issue of arbitrability.

The Parkway Agreement contains a Survival section which lists, among others, the obligation to arbitrate as an obligation which survive the expiration or termination of the agreement.

> All obligations in this Agreement that by their nature survive the expiration or termination of this Agreement, including [...] Arbitration (section 27), will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement and until they are satisfied in full or by their nature expire.

Pl's Am. Compl. Ex C. § 29.8.  Under Section 27.4 of the Parkway and So-Mo Dealer Agreements, it appears that disputes over arbitrability are subject to arbitration. By its own terms, the arbitration requirements survived the termination of the Parkway Agreement.  Thus to the extent that plaintiff is arguing that her joinder violates Section 27.4 of the Parkway Agreement, that issue is subject to arbitration.

As to plaintiff's argument that the 2019 MTA barred her joinder in the So-Mo Arbitration, the Court finds that the MTA did not release her from arbitration for two reasons.  First, under Section 2.1 of the MTA, all surviving obligations listed in Section 29.8 of the Parkway Agreement were not altered by the termination.[5]  Second, and more importantly, Section 2.10 of the MTA explicitly subjects all disputes arising under the MTA, or otherwise, to arbitration as required in the Parkway Agreement, including disputes about arbitrability under Section 27.4.   In so far as plaintiff is arguing that the MTA released her from the 2017 joinder agreement, that is a dispute which clearly arises under the MTA and is subject to arbitration.  Indeed, the very section plaintiff cites as releasing her from her contractual obligations to SAHS explicitly recognizes that neither party is released from the surviving obligations in the Parkway agreement, including the obligation to arbitrate.

Setting aside the clear language of the MTA, plaintiff might still argue that she cannot be forced to arbitrate regarding violations of the So-Mo Dealer Agreement

---

[5] "Nothing contained herein relieves you of any obligations in the Dealer Agreement which survive termination of the dealer agreement, including, without limitation, those set forth in Section 29.8 of the dealer agreement[.]" Pl's Am Complaint Ex. 2 § 2.1.

because she did not sign it. However, even absent the MTA and Parkway Agreement, arbitration still would have been proper based on plaintiff's relationship both to So-Mo and Fangman. *See* American Arbitration Association Case No. 01-19-0001-3815 (Nov. 24, 2019) (discussing natural persons and direct benefits estoppel joinder).

The provisions of the So-Mo Dealer Agreement itself provided an alternative basis for joining plaintiff in the arbitration. Section 27.2 of the So-Mo Dealer Agreement provided that if persons are "subject to these arbitration requirements, including *shareholders*, officers, directors, agents, employees, and attorneys in presentative capacities, these arbitration requirements will also apply to the spouses and *immediate family members* of these natural person." Def's Resp. to Pl's Mot. for TRO Ex. 1 § 27.2. (emphasis added). Not only is plaintiff an immediate family member of Fangman, but she is also a co-owner and agent of So-Mo. She is also, according to Fangman, the sole operator of the competing store in Klamath Falls, and so the breach of the non-competition clause claim could not be fully resolved without her. Thus, by the terms of Section 27.2, she was subject to the So-Mo Arbitration.

Finally, the Court notes that it would agree with the reasoning of the arbitrator that joining plaintiff does not violate Section 27.4 of the So-Mo Dealer and Parkway Agreements. Namely, the arbitrator did not consolidate claims, rather she was dealing with same claim against both plaintiff and Fangman, that they breached the covenant not to compete found in Section 15.8 of the So-Mo Dealer agreement.

The Court notes that it does not find, nor has plaintiff articulated, any grounds under the FAA for vacating the final award of the So-Mo arbitrator. Accordingly, that request is without merit.

The Court concludes that the terms of the So-Mo Dealer Agreement bound plaintiff to arbitration. Further, any dispute regarding whether that joinder violated the 2019 MTA or the Parkway Dealer Agreement are also subject to arbitration by the terms off those agreements. Thus, Court finds no clear error in denying the previously requested preliminary relief. Plaintiff's motion is, therefore, denied.

II.   *Defendant's Motion to Dismiss*

Defendant alleges that there is no longer a live controversy between the parties because a final award has been entered in the underlying arbitration, and redressability for the harms alleged in the complaint are no longer possible. Defendant also argues that plaintiff fully participated in the So-Mo Arbitration, and thus cannot claim irreparable harm from participation.

Defendant correctly argues in its motion to dismiss that the burden of establishing federal jurisdiction falls on the party invoking jurisdiction. *See Swango v. Nationstar Sub1, LLC*, 292 F. Supp. 3d 1134, 1141 (D. Or. 2018). However, the burden shifts to the movant where the subject matter problem being invoked is mootness. *Id*. The party raising mootness always must show that intervening events have either rendered the parties no longer adverse, or that there is nothing the court can do that would resolve the dispute. *See Hamidi v. Service Employees Int'l Union Local 1000*, 386 F. Supp. 3d 1289, 1294 (2019) (internal citations omitted).

While plaintiff argues that a final award in the arbitration makes her claims more acute as she sought to avoid such an award, as discussed above, she was bound to arbitrate the claims of defendant in that forum.  In response to the present motion, plaintiff now argues that her complaint is an attack on the jurisdiction of the arbitrator rather than one based on contract.  That argument is belied by the relief requested in her complaint.  Plaintiff's complaint requested that this Court declare that defendant had violated the terms of the agreements between the parties by seeking to join her in the So-Mo Arbitration.  Further, plaintiff requested that the Court vacate the arbitrator's preliminary order joining her to the So-Mo Arbitration and prohibit defendant from seeking any further joinder.  However, as explained above, defendant did not violate the terms of those agreements, because the underlying dispute was subject to arbitration and the arbitration agreements here were valid.

Now, plaintiff requests vacatur of the arbitrator's final award.  That relief is not requested in her complaint, nor has plaintiff requested leave from the Court to amend her complaint in the months that have passed since the final award was entered.

"The arbitrability of a particular dispute is a threshold issue to be decided by the courts."  *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1268 (9th Cir.2006) (en banc).  Once a particular dispute has been deemed arbitrable, all aspects of the dispute, including a wide variety of "gateway procedural disputes" are properly raised

before an arbitrator, and not the courts.  *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84–85 (2002).

There is nothing further for this Court to resolve.  The So-Mo Arbitration is now complete.  In any event, the agreements here are clear, all issues of which plaintiff complains are covered by the arbitration provisions.  Whether defendant violated the terms of the 2019 MTA is subject to arbitration as is the dispute that the arbitrator misapplied Section 27.4 of the Dealer agreements.  Plaintiff's remedy if she is dissatisfied with the rulings of the arbitrators is to seek an appeal pursuant to the arbitration agreement, which it appears she has done.

In her response, plaintiff claims she is challenging jurisdiction, but she presents no allegations that the arbitration provisions are invalid.  In briefing, plaintiff primarily relies on the holding in *Nagrampa, supra*, to support her argument that this Court should still entertain her argument that the arbitrator lacked jurisdiction over her and that she did not waive her challenge to jurisdiction simply by participating in the So-Mo Arbitration. In *Nagrampa,* the Ninth Circuit reversed a district court decision to dismiss an action, where it found that a franchise agreement's arbitration provision was procedurally unconscionable.  The *en banc* court also found that provisions which gave defendant access to is choice of forum were substantively unconscionable.  Here, plaintiff has made no arguments or presented any evidence supporting a finding of procedural or substantive unconscionability.  Plaintiff also has not plead that the provisions were a product of

fraud or duress.  Accordingly, the Court finds that plaintiff's reliance on *Nagrampa* is unavailing.

Plaintiff did participate in the underlying arbitration and offered arguments on the merits at the final hearing on this matter.  She also submitted her initial challenges to the joinder before the arbitrator.  After receiving an unfavorable outcome, she then brought claims to this Court seeking the relief the arbitrator denied.  But this Court does not have jurisdiction hear appeals of an arbitrator's decision when the parties contracted undergo arbitration.

As the agreements bound plaintiff to arbitration, and as she has not alleged the arbitration agreements in this case are invalid, there is nothing left for this Court to resolve, nor is there any plausible relief as plead in plaintiff complaint it could now grant.  Therefore, defendant's motion to dismiss should be granted.

## CONCLUSION

For the reasons state above, plaintiff's motion for reconsideration (Doc. 20) is denied, and defendant's motion to dismiss (doc. 16) is GRANTED.  Accordingly, this action is dismissed.

IT IS SO ORDERED.

Dated this 31st day of January 2021.

<u>s/Ann Aiken</u>
Ann Aiken
United States District Judge